**FILED**

AUG 27 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**19CR 678**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | Violations: Title 18, United States Code, Sections 1347 and 1519 |
| SUMMER MATHESON, TERRENCE EWING, and RICHARD GRUNDY | **JUDGE BLAKEY** |
| | **MAGISTRATE JUDGE VALDEZ** |

## COUNTS ONE THROUGH SIX

The SPECIAL JUNE 2018 GRAND JURY charges:

1.    At times material to this Indictment:

a.    Laynie Foundation, Inc. was a non-profit corporation organized under the laws of Indiana with its principal place of business in the Northern District of Illinois that purported to provide mental health services to children.

b.    Defendant SUMMER MATHESON was the chief operating officer, secretary, and co-owner of Laynie Foundation, Inc.

c.    Defendant TERRENCE EWING was the president, chief executive officer, and co-owner of Laynie Foundation, Inc.

d.    Defendant RICHARD GRUNDY worked as a supervisor at Laynie Foundation, Inc.

e.    Defendants MATHESON and EWING were the only signatories on and controlled banks accounts in the name of Laynie Foundation, Inc.

1

f.      Illinois Medicaid was a health care benefit program, as defined in Title 18, United States Code, Section 24(b), funded by the State of Illinois and the United States and administered by the Illinois Department of Healthcare and Family Services (HFS) that provided health care benefits to eligible children, including mental health services to children enrolled in the Screening, Assessment, and Support Services (SASS) program.

g.      Laynie Foundation, Inc. was required to submit certain claim information to Illinois Medicaid or a managed care organization used by Illinois Medicaid for reimbursement for covered mental health services it provided to children enrolled in the SASS program.   Required claim information included: the child's name; insurance number; date of birth; the mental health services provided; the time spent providing each mental health service; the location where each mental health service was provided; and the charge for each mental health service provided.

h.      Illinois Medicaid or a managed care organization used by Illinois Medicaid paid for mental health services that were covered by a child's insurance policy and for which a representation had been made that the services were actually provided to the child and medically necessary (which required among other things that a licensed practitioner approve the services).   Services that were provided for a longer period of time (which were billed in "units" of 15-minute increments) received a larger payment.

2

i.  Illinois Medicaid or a managed care organization used by Illinois Medicaid paid approved claims for covered services either by check sent by United States mail or by electronic deposit.

2.  Beginning in approximately August 2011, and continuing until approximately March 2018, in the Northern District of Illinois, Eastern Division,

SUMMER MATHESON,
TERRENCE EWING, and
RICHARD GRUNDY,

defendants herein, participated in a scheme to defraud a health care benefit program, namely Illinois Medicaid and managed care organizations used by Illinois Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of that health care benefit program in connection with the delivery of and payment for health care services, as further described below.

3.  It was part of the scheme that defendants MATHESON, EWING, and GRUNDY fraudulently obtained approximately $4,000,000 from Illinois Medicaid and managed care organizations used by Illinois Medicaid by submitting, and causing to be submitted, fraudulent claims for payment that falsely represented that Laynie Foundation, Inc. provided certain covered mental health services to SASS-enrolled children, knowing that those services were not actually provided as billed, not provided for the length of time claimed, not approved by a licensed practitioner, and not covered under Illinois Medicaid.

3

4.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY fraudulently and systematically billed, and instructed others to bill, certain mental health services at predetermined amounts of time, such as 16 units (4 hours), 12 units (3 hours), or 6 units (1.5 hours), knowing that the actual services provided took less time to complete.

5.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY fraudulently and systematically billed, and instructed others to bill, activities that defendants knew were not reimbursable, such as internal case reviews and audits, staff training, clinical supervision, and recordkeeping.

6.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY fraudulently and systematically billed, and instructed others to bill, certain mental health services that required review and approval by a licensed practitioner, such as mental health assessments and individual treatment plans, knowing that no licensed practitioner reviewed and approved those services.   In some instances, defendant MATHESON reviewed and approved mental health assessments and individual treatment plans even though she was not a licensed practitioner.

7.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY created, and caused others to create, false patient records and forms at Laynie Foundation, Inc. to substantiate the fraudulent claims submitted

4

by Laynie Foundation, Inc. to Illinois Medicaid and managed care organizations used by Illinois Medicaid.

8.    It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY, utilized computer software (Laynie Logistics) to fraudulently and systematically bill, and instruct others to bill, certain mental health services at predetermined amounts of time, knowing that the services took less time to complete.

9.    It was further part of the scheme that defendant MATHESON directed Laynie Foundation, Inc. personnel to backdate and falsify patient records and forms to make it appear that a licensed practitioner reviewed and approved certain mental health services on the dates those services were provided, knowing that the services had not been reviewed and approved by a licensed practitioner on the dates the services were provided.

10.    It was further part of the scheme that defendants MATHESON and EWING typically deposited, and caused to be deposited, the money that Laynie Foundation, Inc. received from Illinois Medicaid and managed care organizations used by Illinois Medicaid for services into a bank account in the name of Laynie Foundation, Inc.    Defendants MATHESON and EWING transferred some of the money from that Laynie Foundation bank account to a bank account in the name of DWC Laynie Investments, LLC, a for-profit business owned by MATHESON. Defendants MATHESON and EWING used both companies' bank accounts for personal purposes.

11.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY divided among themselves, and caused the division among themselves of, the payments Illinois Medicaid and managed care organizations used by Illinois Medicaid made to Laynie Foundation, Inc. for mental health services that were not actually provided as billed, not provided for the length of time claimed, not approved by a licensed practitioner, and not covered under Illinois Medicaid.

12.     It was further part of the scheme that defendant MATHESON submitted, and caused to be submitted, a provider enrollment application to HFS on behalf of Laynie Foundation, Inc. in which she certified that Laynie Foundation, Inc. had not been suspended, excluded, or barred from the Illinois Medicaid program, when defendant MATHESON knew that Laynie Foundation had been suspended, excluded, or barred from the Illinois Medicaid program, and obtained a second provider number for Laynie Foundation, Inc. based on that false certification that enabled Laynie Foundation, Inc. to continue to submit claims to Illinois Medicaid and managed care organizations used by Illinois Medicaid.

13.     It was further part of the scheme that defendants MATHESON, EWING, and GRUNDY concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

14.     On or about the dates set forth below, in the Northern District of Illinois, Eastern Division,

6

SUMMER MATHESON,
TERRENCE EWING, and
RICHARD GRUNDY,

defendants herein, did knowingly and willfully execute and attempt to execute the

above-described scheme by submitting and causing to be submitted claims to a health

care benefit program, namely Illinois Medicaid and managed care organizations used

by Illinois Medicaid, for mental health services that were not actually provided as

billed, not provided for the length of time claimed, not approved by a licensed

practitioner, and not covered under Illinois Medicaid:

| COUNT | CLAIM DATE RECEIVED | CLAIM DATE OF SERVICE | CLAIMANT | BENEFIT PROGRAM | PATIENT | PROCEDURE CODE | DEFENDANT |
|---|---|---|---|---|---|---|---|
| 1 | 10/31/14 | 9/29/14 | Laynie Foundation, Inc. | Illinois Medicaid | K.R. | T1016 | Matheson Ewing Grundy |
| 2 | 11/3/14 | 10/10/14 | Laynie Foundation, Inc. | Illinois Medicaid | R.J. | H0032 | Matheson Ewing Grundy |
| 3 | 4/20/15 | 3/17/15 | Laynie Foundation, Inc. | Illinois Medicaid | K.H. | H0031 | Matheson Ewing Grundy |
| 4 | 5/5/15 | 4/5/15 | Laynie Foundation, Inc. | Illinois Medicaid | J.C. | H2011 | Matheson Ewing Grundy |
| 5 | 2/1/18 | 12/11/17 | Laynie Foundation, Inc. | IlliniCare Health Plan, Inc. | K.S. | T1016 | Matheson Ewing |
| 6 | 2/1/18 | 12/15/17 | Laynie Foundation, Inc. | IlliniCare Health Plan, Inc. | K.S. | H0004 | Matheson Ewing Grundy |

In violation of Title 18, United States Code, Section 1347.

7

## COUNT SEVEN

The SPECIAL JUNE 2018 GRAND JURY further charges:

1.　　Paragraphs 1a and 1b of Count One are incorporated here.

2.　　Defendant SUMMER MATHESON knew no later than approximately August 2015 that the United States Department of Justice was investigating her involvement in a health care fraud scheme stemming from false claims submitted to Illinois Medicaid by Laynie Foundation, Inc.

3.　　From approximately August 2015 through approximately February 2016, in the Northern District of Illinois, Eastern Division,

SUMMER MATHESON,

defendant herein, knowingly altered, concealed, covered up, falsified, and made a false entry in any record, document, and tangible object, namely patient records and forms, with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within the jurisdiction of any department or agency of the United States, namely the United States Department of Justice's investigation into MATHESON's involvement in a health care fraud scheme stemming from false claims submitted to Illinois Medicaid by Laynie Foundation, Inc.;

In violation of Title 18, United States Code, Section 1519.

8

## <u>FORFEITURE ALLEGATION ONE</u>

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

SUMMER MATHESON and
TERRENCE EWING,

defendants herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.      The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $4,000,000.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

9

## **FORFEITURE ALLEGATION TWO**

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

RICHARD GRUNDY,

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $2,500,000.

10

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY


11